RECEIVED
MAY 2 8 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Deniece Jones                                C.A. No. 07-01994(RJL)
Antoine B. Jones, Jr.
Mary R. Johnson
12221 Brandywine Road, Brandywine, MD 20613
    Plaintiffs

v.

Defendant(s)
Special Agent Stephanie Yanta, FBI, and Stephen Naugle, FBI, Special Agent Kellie O'Brien, FBI
Steve Kirchner, Detective; Norma Horne, Detective, DC MPD
441 Fourth Street, NW, Sixth Floor North, Washington, DC 20001
US DOJ AUSA Rachel Lieber, AUSA John Geise
950 Pennsylvania Ave, NW, Washington DC 20004

Memorandum of Points

Plaintiffs do hereby come before the Courts to file this Memorandum of Points to supplement civil claim against the US Department of Justice, the Federal Bureau of Investigation, FBI Special Agent Stephanie Yanta, FBI Agent Kellie O'Brien, Steve Kirchner, DC MPD Detective, Norma Horne, DC MPD Detective, Assistant US Attorney Rachel Lieber, and Assistant US Attorney John Geise for damages in the amount of $20,000,000 for violation of my constitutional rights by government officials acting under Color of Law pursuant to 42 U.S.C.1983.

STATEMENT OF FACTS

Assistant US Attorneys Rachel Lieber and John Geise, along with FBI agents and DC MPD agents working on the FBI's Joint Task Force have violated several of the **Rules of Professional conduct (Rule 3.8, Rule 8.4)**. The named persons repeatedly committed perjury, displayed blatant disregard for the truth, were dishonest, deceitful and intentionally made numerous misrepresentations to the courts, coerced others to make misrepresentations to the courts, judges, trial jury, in the many affidavits, grand jury and

1

pretrial motions and during the two trials of *US v Jones, et al, CR-05-0386*. The government attorneys and agents violated the law, made numerous false, slanderous and perjured statements, violated many ethical codes, willfully ignored and violated the constitutional rights of the plaintiffs, and placed themselves above the law.

In an effort to cover up wrongful acts committed by the government agents, the government agents and attorneys conspired, altered, withheld and did not disclose very important and significant **Brady material under Rule 16**. These items of evidence would have revealed the illegal actions taken by the FBI agents and DC MPD detectives and further, the withholding of these items deprived plaintiffs of their Constitutional Rights and seriously interfered with Administration of Justice and violating the **Code of Professional Conduct (Rule 3.8, Rule 8.4)**.

The Act of Perjury (Black Law) – The act or an instance of a person's deliberately making false or misleading statements while under oath.

The *Act of Misconduct (Black Law)* – Unlawful or improper behavior, corrupt violation of his or her duties, reckless disregard of another Rights, dishonesty or attempt to persuade a court or jury by using deceptive or reprehensive method.

The Law states, act or omission by an attorney, (prosecutors or persons which violating the attorney oath of office or the Rule of Code of Professional Conduct, currently in effect in the District of Columbia shall constitute misconduct. When the Government and law enforcement willfully ignore these violations and intentionally violate these misconducts. The Government knows the consequences and when they choose this course of action the consequences will be severe. **When a member of the Bar is found to have betrayed his or her highest trust and has violated legal ethics by showing bias and prejudice towards a defendant or defense team, warrant prosecutorial misconduct. Numerous examples of perjury (18§1623 False Declarations before Grand Jury or Court)**, false statements, misstatements and misconduct were uncovered in the affidavits

2

in the statement of facts naming Plaintiff Deniece Jones and slandering plaintiff's name and reputation in the business community where Mrs. Jones has worked.

The US Supreme Court has ruled repeatedly that prosecutors have an ongoing duty to locate discoverable evidence held by agents of the State and present the discovery evidence in a timely manner, not during trial or when a witness gets up for the Government, as was done repeatedly in this case during both trials *US v Jones CR-05-0386*. Even if the prosecutor doesn't know about the evidence because the agents withheld it, as fellow agents of the Government, prosecutors are held to have "constructive knowledge" of law enforcement evidence. This is about making sure that the trial is a search for the truth, and the truth comes out. The neglect of the Brady material under Rule 16, by the Government which is favorable to the accused upon request violates due process. The Government held back on numerous items of Brady material as well as Jencks and Giglio materials.

PROSECUTORIAL MISCONDUCT - RACHEL LIEBER
RULE 16, BRADY MATERIAL, NON-DISCLOSURE VIOLATION

Assistant US Attorney Rachel Lieber denied plaintiffs the opportunity to visit with, Antoine Jones, Sr., while he was being detained at DC Jail and also denied plaintiffs the opportunity to receive telephone calls, receive mail, or have any contact or communicate with Antoine Jones for approximately four months (Nov 2005-Mar 2006). Ms. Lieber took it upon herself to make this determination without consulting the Courts and without permission or order from the Court. Plaintiff asserts that Ms. Lieber's actions were outside the realm of her authority.

Plaintiff hereby asks the courts to not allow the defendant and their high powered lawyers to manipulate the truth and the facts with legal jargon and abundance of case law riddled with matters not pertaining to the issue or facts of truth outlined by the Plaintiffs. The Plaintiffs have shown, and welcome the opportunity to demonstrate before a trial

3

jury, numerous instances where the defendants, including Rachel Lieber, violated the Plaintiff's Constitutional Rights, committed perjury, fabricated stories, and displayed a total disregard for the truth and for the laws governing the land.

## FACTS

Plaintiffs refute the notion that "<u>Antoine Jones placement in Total Separation was pursuant to a legitimate government interest</u>".

(1) Not once has the government (Rachel Lieber) presented testimony, nor was evidence presented throughout two entire trials which demonstrate this claim of "legitimate government interest". The government made reference to unsupported "confidential sources" unrelated to the Jones (Sr) case - - confidential sources who were never called into court for questioning nor was Jones Sr allowed to face these any of these accusers. Despite the government's efforts to conceal it, evidence and facts were shown in court **that prove the government conspired to fabricate stories with officers**, including defendant Norma Horne (DC MPD), Kelli O'Brien (FBI) and Stephanie Yanta (FBI).

(2) During the suppression hearing on November 15, in *US v Jones* No. 05-386(ESH), the Honorable Judge Ellen Huvelle denied Mr. Jones the opportunity to argue the matter of illegal cell search. Mr. Jones provided the court (Judge Huvelle) with information and evidence to support the argument of **illegal search and seizure** of his DC Jail cell. The government removed a personal letter to Jones Sr from Mrs Jones (his wife). The transcripts clearly demonstrate Jones Sr was prepared to present truth and facts to expose the government's **violation of Jones' Constitutional Rights** and the government's fabrication of stories throughout the investigation. Plaintiffs assert that

4

Judge Huvelle was made aware of the conspiracy between the prosecutors and the law enforcement officers to **hide the truth, fabricate evidence** and **conceal** the **corrupt efforts of the government and its representatives**.

Judge Ellen Huvelle boldly stated to the government that she did **not** give a court order to place Mr. Jones (Sr) in Total Segregation, and to remove Jones from Total Segregation. The Judge further removed Mr. Jones (Sr) from TS and gave him access to court (the Law Library), phone privileges and visitors.

This hearing shows the undermining actions of Rachel Lieber to force her personally derived punishments on Jones and family (wife and son). Ms. Lieber decided to operate above the law; did not obtain approval of the courts, and she once again violated Jones' Constitutional Rights, whereby inflecting undue punishment on named plaintiffs.

These two instances cited here demonstrate and prove that Rachel Lieber and the other defendants named here did not have any legal grounds to stand on, nor any truthful legitimate government interest. Just as ordinary citizens are held to the letter of the law, so also is prosecutors, judges, and law enforcement agents. Again, plaintiffs are laypersons and assert their novice abilities to defend their Constitutional Rights. Plaintiffs have outlined these instances of self-centered, self-serving prosecutor and law enforcement officers asserting their personal determination to incriminate, fabricate and deceive the courts and the public in order to convict Mr. Jones regardless of what the law states.

Here we have an experienced US Assistant Attorney (Ms. Lieber) who has decided, in her words, " to exercise rational judgment" a judgment that violates the

Constitutional Rights of a pretrial detainee (Mr. Jones) and to take actions against Mr. Jones and his family (named plaintiffs) without consulting the court to obtain approval or direction. Ms. Lieber's actions were vigilante, at best. ***Ms. Lieber and the defendants named here violated the very law that they pretend to uphold.*** Rachel Lieber and John Geise continually violated many of Jones' due process rights throughout the pre-trial and trial. These violations directly affected plaintiffs here as Mr. Jones Sr was stripped of incoming and outgoing mail privileges, telephone privileges, and social visits. They continued to monitor telephone calls between Mr. and Mrs. Jones and ignored privacy and minimization rules and laws.

Ms. Lieber, as an "experienced" US Assistant Attorney, should have known and should have used better judgment than to deliberately violate Mr. Jones' Constitutional Rights according to the Sixth Amendment. Ms. Lieber displayed prosecutorial misconduct in many instances.

As an experienced US Assistant Attorney, Ms. Lieber surely would have served justice better by using good judgment, not committing prosecutorial misconduct by violating Jones' Constitutional Rights and stripping Jones of his due process. The US Attorney's Office has the option and resources to send any pretrial witness over to the DC Jail C.T.F. facility or to the fourth floor protective unit specifically for cooperators or potential government witnesses. Rachel Lieber's actions were deliberately cruel, undue and unjust, and clearly outside of her scope of authority. ***Ms. Lieber's behavior was vindictive, ruthless and thoughtless and these decisions had negative consequences on the Plaintiffs.***

In the criminal case of Unites States v. Antoine Jones (05-386), Ms. Lieber submitted a Motion in which she states "there were rumors that the guys from Club Levels were looking for someone to kill, intimidate, etc." The fact is this statement was not rumored at all, but instead was a fabricated lie created by Ms. Lieber and was unsubstantiated in any court documents. The statement suggests that there were more than one person, i.e., "guys" but the government never stated the foundation of these "rumors" nor are any persons referred to as "guys" named. Government witness, John Adams, testified that Mr. Jones was not a violent person. The government had absolutely no evidence to substantiate that Mr. Jones was a violent person. Ms. Lieber ordered Mr. Jones (singular, one person) under total separation. Ms. Lieber's misconduct further caused named Plaintiffs stress, depression, anxiety, physical pain and suffering, emotional and mental duress.

The other alleged co-conspirators and codefendants in *US v Jones, CR-05-0386* demonstrated and proved they are not violent nor were they planning or intending to harm anyone. Codefendant Adrian Jackson: acquitted of all charges. Mr. Jackson was allowed to work on the detail and interact with the general population with no institutional incidents or violent acts. Codefendant Kirk Carter: outside work detail and eventually released to halfway house where he continued to work his regular job in the community. No violent acts – no incidents. Codefendant Michael Huggins: worked on a plumbing detail, interacted with general population, no incidents or violent acts. Codefendant Demetris Johnson: worked on a detail, interacted with general population, no incidents or violent acts. Mr. Johnson later decided to testify for the government.

Codefendant Lawrence Maynard: worked on a detail, interacted with general population, no incidents or violent acts. Mr. Maynard was housed in the CTF facility. The bottom line here, Mr. Jones (Sr) and none of his codefendants are violent, have violent histories, nor did any of them give the government reason to assert such a statement or belief.

In an effort to regain his mail, telephone and social visits, Mr. Jones (Sr) took months to follow the policy and guidelines of the Department of Corrections by exhausting all grievance remedies up to, and including writing the D.C. Mayor's office. Mr. Jones' complaints were ignored. During this entire period, Mrs. Jones and Jones (Jr) inquired and attempted to visit and write Mr. Jones (Sr) but to no avail. The mail was withheld and social visits were repeatedly denied. The fax from Rachel Lieber ordering Mr. Jones to be placed in Total Separation was not a court order. It was a fax from Ms. Lieber herself; albeit out of order and out of line.

Indeed, like in *Valdez*, "there is no 'legal' prohibition on federal prosecutors making request to prison officials to monitor an inmate because of a legitimate concern that an inmate could interfere with the government's case."

In addition to the mental hardship this presented to plaintiffs, Ms. Lieber also violated certain Civil liberties, including the defendant's (Jones Sr) right to discovery under Rule 16, Brady Material, violating Ethical Code (Rule 3.8, Rule 8.4), denying defendant the right to prepare for a fair trial. Although plaintiffs were not on trial, these acts of professional misconduct violate plaintiff (Deniece Jones) as she is the wife of Jones Sr and Anoine Jones Jr as he is son of Jones Sr.

Jones Jr was enrolled as a fulltime student at Coppin State University in Baltimore and because of the mental anguish and hardships placed on Jones Jr and family, Jones Jr was forced to drop out of college and was unable to focus or concentrate on education. Jones Jr was further unable to commute from home in Waldorf, MD to Baltimore MD to attend

class. Further, plaintiff Deniece Jones operated a consulting firm from our home as well as a real estate investment venture. Ms. Lieber and the Ms. Stephanie Yanta ignored requests for the return of documents that were taken from the house (Moore Street, Waldorf) which did not pertain in any way to a criminal investigation, but were in fact crucial to the continuance of the consulting business as well as the real estate investment business. Through the many requests defendant Jones made for his Rule 16 Discovery, through motions, notations in court, and verbal requests to the judge in open court, the prosecutor has ignored all of defendant's requests and has not given me or my family all of the discovery documents from the Moore Street house. During the trial, by court order, defendant Jones (Sr) was allowed to go through a select few of the boxes of documents taken from the Moore Street house where he was allowed to flag some items. The agents decided which boxes the defendant would be allowed to go through. Defendant Jones (Sr) did "flag" some items to assist his defense, but still has not received copies of the items he "flagged". Defendant Jones (Sr) noted that some of the items he was interested in using in his defense which were seized from the Moore Street house, i.e., real estate contracts, club flyers, financial documents, cell phone bills, etc., were never presented to him, nor were they in the boxes of documents that the agents allowed the defendant to go through. In essence the agents decided which items they would allow the defendant (Jones Sr) to view and all other items were kept from the Joneses, and the defense legal team. This act severely handicapped plaintiffs' ability to continue business affairs in both the consulting business and the real estate business. Rule 16 states that the defendant is entitled to his discovery and in a timely manner. The non-disclosure of these relevant documents, discovery, and important evidence, under Rule 16, the Brady Material is a violation of Ethical Code, Rule 3.8, Rule 8.4 and Prosecutorial Misconduct.

Special Agent Stephanie Yanta created an affidavit filled with lies, untruths and misrepresentations and presented said affidavit to the courts to obtain Wiretap authorization on the cell phone used by Antoine Jones, Sr.. Agent Yanta further used information obtained through the wiretap to lie, harass, deceive, disrupt and interfere with plaintiffs legitimate business relationships. Refer to September 2, 2005 wiretap Affidavit.

During the time of the wiretap Mrs. Jones was negotiating a Federal contract with business acquaintances and the agents, Yanta, *et al* interfered with this process, slandered and scandalized Mrs. Jones whereby causing Mrs. Jones to lose this business opportunity. The contract which was discussed between Mr. and Mrs. Jones over the course of the wiretap was a 5-year $20,000,000 contract with the Department of Health & Human Services. In addition, Mrs. Jones was also inhibited from practicing Real Estate business due to this scandal and the slandering of her name and business causing additional inability to produce income and loss of potential income.

### Illegal Search of Moore Street house and the Jeep Cherokee:

FBI Agent Stephen Naugle entered the Moore Street house without a search warrant. Again, the government has danced around this issue by having high-powered government attorneys skirt around the issue with legal jargon. The truth of the matter is, every one of the agents that entered the residence at 10870 Moore Street Waldorf on the morning of October 24 is (or at least should have been) aware that a search warrant is required and a signature must be obtained on the Search Warrant or Attachment A. A search warrant was never presented, signed, photographed nor was a copy of a search warrant or Attachment A left with the occupants. The agents (FBI and DC MPD Safe Streets Task Force) all entered the house in the dark, came up stairs to the bedrooms and snatched plaintiffs out of beds, pointed guns at our heads and made us lay on the floor while they commenced to search the house. Throughout that search, an Asian agent repeatedly asked if he should photograph the search warrant. This agent was sent into the garage. No legal doubletalk can negate the fact that the agents did not present a search warrant. Plaintiffs assert the only documents presented were the inventory sheets which plaintiff was told to sign. The law is as it is written and plaintiffs assert that every person who entered the residence on that morning violated the law – conducted an illegal search and seizure.

Agent Naugle perjured himself in the trial. He testified that they entered the house after 6 a.m. The GPS data on the Jeep Cherokee shows the last entry on the device (when the

agents disconnected it) was at 5:21 a.m. Mrs. Jones testified under oath that the agents entered the house at 4:45 a.m. Further, since Jones Jr was attending college in Baltimore, he set his alarm clock for 5:00 a.m. Jones Jr would leave the house at 6 a.m. each morning in order to get to class on time. On the morning of October 24, the agents entered the house before the 5 a.m. alarm clock sounded. Additionally, a television alarm set for 6 a.m. and my parents (Deniece and Antoine Jones Sr) get up each morning at that time to start their day and see Jones Jr off to school and make sure Jones Jr is properly prepared for the long commute to Baltimore for college. On the morning of October 24th, he agents were inside the house and had pulled us all out of bed and handcuffed us. They (the agents) were well into their searching when the television alarm came on at 6 a.m. The agents were startled by the noise. Both the alarm clock and the television sounded after the agents were inside the house.

As part of this investigation, there were other houses searched on that morning as well as our home. The other locations have a photograph of the Search Warrant and Attachment A. The photos were taken with the residents either holding the search warrant or it was photographed inside the location or attached to the wall. During the search at our residence (Moore Street) one of the agents (an Asian) repeatedly asked the other agents if he should "take a picture of the search warrant now". There is no photo of a search warrant or Attachment A at the Moore Street house. The agents never presented any of the occupants of the Moore Street house with a search warrant or Attachment A. The search warrant document states that a copy of the search warrant and Attachment A must be signed by the occupants and left at the location. The agents took over 40 boxes of personal, private, and business documents. The agents had Deniece Jones sign the inventory sheets for the items they took from the house. Again, plaintiffs assert there was no search warrant or Attachment A presented, signed or left at the premise. Plaintiffs also assert the agents were well aware as there is no photograph taken on the premises of any such Search Warrant or Attachment A.

Horne Materially False Statement: Norma Horne testified, page 19, lines 20-21. Agent Horne testified "we believe he has several houses from Baltimore, PG County. We think

it is <u>six</u>". Detective Horne repeated this during the second trial with certainty, stating they own six houses; Norma Horne was co-lead agent. According to the testimonies provided by the agents, this investigation was supposed to have been going on since late 2004. During the wiretap and investigation, investigators only mentioned the Brandywine Road house. The Brandywine Road house is actually a property rented out to Mary Johnson, and resided in by Mary Johnson and her daughter Paulette Bizzelle, Mrs. Jones' mother and sister. It was made evident by the wiretap that the Jones' were buying and living in the Moore Street house in Waldorf, Maryland. Mr. and Mrs. Jones also own a house (an uninhabitable shell) in Baltimore, Maryland which they purchased in August 2005. Because of all of the negative publicity surrounding this investigation, the contractor working on the house abandoned the project. Plaintiffs were depending on him finishing the rehab project so that Jones Jr and his classmates from Coppin State's marching band would have a place close to school to live. Detective Horne's statement is deceiving and perjurous to testify that the Jones' own "<u>six</u>" houses. Agent Horne knowingly and corruptly made these false declarations and lied on named plaintiffs.

Not once, in any statements, any documents, nor during pre-trial is any information on record that Mr. Jones went out to the garage and pointed out anything to the agents. I challenge Norma Horne's false testimony, by arguing that from the time the agents entered the house (again without a Search Warrant) and demanded everyone in the house to lie down on the floor, they handcuffed all the occupants. Never was it stated, written or communicated in any manner that the agents took Mr. Jones Sr to the garage, removed the handcuffs and Mr. Jones pointed out anything in the garage or inside the Jeep itself. If Detective Horne testified about these events as the lead agent, there should be some report of such events. The truth of the matter is that the agents entered the Moore Street house without a search warrant (this is why the Agents were never able to obtain a signature on the original warrant from any of the occupants of the house), and the agents dishonestly conspired and created this fictitious statement to cover their "illegal search and entry." While the agents were in the house conducting the search, one agent in particular (an Asian) repeatedly asked if he should photograph the search warrant. That photograph was never taken and never presented. Again, the FBI agents knowingly and