UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DENIECE JONES,<br><br>        Plaintiff,<br><br>        v.<br><br>STEPHANIE YANTA, *et al.*,<br><br>        Defendants. | Civil Action No. 07-1994 (RJL) |
| MARY R. JOHNSON,<br><br>        Plaintiff,<br><br>        v.<br><br>STEPHANIE YANTA, *et al.*,<br><br>        Defendants. | Civil Action No. 07-1995 (RJL) |
| ANTOINE B. JONES, JR.,<br><br>        Plaintiff,<br><br>        v.<br><br>STEPHANIE YANTA, *et al.*,<br><br>        Defendants. | Civil Action No. 07-1996 (RJL) |

**MEMORANDUM OPINION**

These consolidated cases are before the Court on defendants' motions to dismiss. For the reasons discussed below, the motions will be granted.

## BACKGROUND

Deniece Jones ("Mrs. Jones"), Mary R. Johnson ("Mrs. Johnson"), and Antoine B. Jones, Jr. ("Jones Jr."), are the wife, mother-in-law, and son, respectively, of Antoine B. Jones, Sr. ("Jones Sr."). Jones Sr. was one of several defendants in a criminal action brought in this court, and both the investigation of Jones Sr.'s activities and the prosecution of his criminal case are the context from which plaintiffs' claims arose:

> As alleged in the Indictment, from at least sometime in 2003 through October 24, 2004, [Jones Sr.] and his co-conspirators acquired, repackaged, stored, processed, sold, and redistributed large quantities of cocaine and cocaine base, in the District of Columbia, the States of Maryland and Texas, the Republic of Mexico and elsewhere. It is further alleged that Jones [Sr.] was the primary supplier of cocaine and cocaine base to members of the organization in the District of Columbia and in the State of Maryland.
>
> As part of their investigation into the alleged conspiracy, law enforcement agents utilized a number of investigative techniques, including surveillance, informants, installation of an electronic tracking device on Jones [Sr.'s] vehicle, search warrants issued to electronic communication service providers for text messages to or from cellular telephones used by Jones [Sr.] and an alleged co-conspirator, and a Title III wire intercept. The covert portion of the investigation ended on October 24, 2005, with searches pursuant to warrants and arrests. At that time, drugs, drug paraphernalia, firearms, and significant quantities of cash were seized from the homes of a number of the defendants, as well as from an alleged "safe house" in Fort Washington, Maryland where 97 kilograms of cocaine, 3 kilograms of crack cocaine, and in excess of $800,000 was found.

*United States v. Jones*, 451 F. Supp. 2d 71, 73-74 (D.D.C. 2006), *recons. denied*, 511 F. Supp. 2d 74 (D.D.C. 2007). Jones Sr.'s first trial "ended in his acquittal on seventeen counts of using a communication facility to facilitate a drug trafficking offense and a hung jury with respect to thirteen similar counts and one count of conspiracy to distribute or possess with intent to

2

distribute a controlled substance." *United States v. Jones*, 511 F. Supp. 2d at 76. On retrial of the remaining counts, Jones Sr. was found guilty on one court of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine and 50 grams or more of cocaine base and was sentenced to a term of life imprisonment. His appeal is pending before the United States Court of Appeals for the District of Columbia Circuit.

A. Deniece Jones, Civ. No. 07-1994

Mrs. Jones brings this civil rights action against the United States Department of Justice ("DOJ"), the Federal Bureau of Investigation ("FBI"), FBI Special Agents Stephanie Yanta ("Yanta"), Kellie O'Brien ("O'Brien") and Stephen Naugle ("Naugle"), Metropolitan Police Department Detectives Norma Horne ("Horne") and Steve Kirschner ("Kirchner"), and Assistant United States Attorneys Rachel Lieber ("Lieber") and John Geise ("Geise") under 42 U.S.C. § 1983. Compl. at 1. She demands damages in the amount of $22,000,000. *Id.*

Mrs. Jones alleges that agents entered her house at 10870 Moore Street in Waldorf, Maryland, in the early morning hours of October 24, 2005 without a warrant, that agents "snatched [her] and [her] family out of [their] beds, pointed guns at [their] heads and made [then] lay on the floor" during the search. Compl. at 6. She states that the agents "took over 40 boxes of . . . personal, private, and business documents" from the residence, *id.* at 7, and among these items were records "crucial to the continuance of [her] consulting business [and her] real estate investment business" but wholly unrelated to the criminal investigation, *id.* at 4. She alleges that she was "severely handicapped in [her] ability to continue [her] business affairs" without these records, and further alleges that her businesses were harmed because Special Agent Yanta "used

information obtained through the wiretap to lie, harass, deceive, and interfere with [her] legitimate business partners." *Id.* at 5.

According to Mrs. Jones, Lieber denied her "the opportunity to visit with [her] husband . . . while he was being detained at the [D.C.] Jail," and also deprived her of opportunities to communicate with Jones Sr. by other means. Compl. at 4. This situation apparently arises from Lieber's December 22, 2005 request to the Warden of the D.C. Jail that Jones Sr. "be placed in protective custody, based on growing concerns that Jones [Sr.]" was misusing his telephone privileges in a way that undermined "the safety of various individuals, and the integrity of the investigation" of his criminal activities. Mem. of P. & A. in Support of Fed. Defs.' Mot. to Dismiss ("Fed. Defs.' Mot."), Ex. C (December 22, 2005 Memorandum) at 1.

Mrs. Jones further alleges that Detective Kirchner and FBI agents are responsible for the placement of a "GPS tracking device on [her] personal auto," a Jeep Cherokee, "in violation of a Court Order" issued in Jones Sr.'s criminal case. Compl. at 3; *see id.* at 5. She asserts that the agents installed the device after the order had expired. *Id.* at 9. In addition, she contended that AUSA Geise presented "tainted GPS data" at trial. *Id.* at 3.

B. Mary R. Johnson, Civ. No. 07-1995

Mrs. Johnson brings this action against the DOJ, the FBI, Yanta, Lieber and Geise under 42 U.S.C. § 1983. Compl. at 1. She demands damages of $1,000,000 for alleged violations of her constitutional rights. *Id.*

Mrs. Johnson rented the house at 12221 Brandywine Road in Brandywine, Maryland from her daughter and son-in-law, Jones Sr., and lived there with another daughter and two grandchildren. Compl. at 3. On October 24, 2005, Mrs. Johnson "was awakened by the sound of

4

FBI agents and DC MPD detectives banging on [the] front door." *Id.* According to Mrs. Johnson, the agents "were yelling threats," pointed shotguns at her, "stormed the house and held [her], [her] daughter and two grandchildren (ages 10 and 11) at gunpoint." *Id.* The agents "were looking for [her] son-in-law (Antoine Jones, Sr.)," *id.*, who, according to Mrs. Johnson, neither resided at nor visited the Brandywine Road house, *id.* at 5. The agents "proceeded to search the house and continued to hold [the occupants] at gunpoint," an event Mrs. Johnson described as a stressful ordeal for the household. *Id.* Since the events of October 24, 2005 and the subsequent decline of Mrs. Jones' businesses, Mrs. Johnson has been supporting Mrs. Jones financially on her retirement income. *Id.* at 4.

C.  Antoine B. Jones, Jr., Civ. No. 07-1996

Jones Jr. brings this civil rights action against the United States Department of Justice, the FBI, FBI Special Agents Yanta, O'Brien and Naugle, and against Assistant United States Attorneys Lieber and Geise under 42 U.S.C. § 1983, and demands damages in the amount of $2,000,000. Compl. at 1.

Jones, Jr., formerly a student at Coppin State University in Baltimore, Maryland, states that he resided at the Moore Street residence and was among the occupants awakened in the early morning hours of October 24, 2005 and held at gunpoint while the search warrant was executed. Compl. at 4-5. He, too, alleges that the agents failed to present a warrant, that defendants seized items unrelated to the criminal investigation and failed to return them upon request, thus hampering the continued operation of the family's real estate and consulting businesses. *Id.* at 4. Further, Jones Jr. alleges that Yanta unlawfully monitored his telephone calls, including conversations with his father, *id.* at 6-7, and that Lieber denied him an opportunity to visit or

5

otherwise contact his father while he was detained at the D.C. Jail, *id.* at 3. As a result of defendants' action, Jones Jr. allegedly has experienced mental anguish and has dropped out of school due to his inability to focus on his education. *Id.* at 3. Although Jones Jr. does not name Horne as a defendant in his action, he faults her for misrepresenting his parents' ownership of real estate, including an "uninhabitable shell" in Baltimore that was to be rehabilitated and made available to him as "a place close to school to live." *Id.* at 6. He alleges that the "negative publicity surrounding this investigation" prompted the contractor working on the Baltimore house to abandon the project. *Id.* Lastly, Jones Jr. challenges the validity of the search warrant for text messages and the wiretap, and accuses Yanta of "illegally eavesdropp[ing] on [his] personal, business and private conversations with [his] father." *Id.* at 7.

### D. All Plaintiffs

Mrs. Jones, Mrs. Johnson and Jones Jr. allege that the individual defendants have violated rules of professional conduct, have perjured themselves before the court, Grand Jury, or trial jury, and, with respect to AUSAs Lieber and Geise, have committed prosecutorial misconduct. Specifically, plaintiffs claim that defendants failed to disclose evidence favorable to Jones Sr.'s defense in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and failed to turn over discovery materials from the items seized from the Moore Street residence. In addition, plaintiffs allege that Yanta obtained the wiretap authorization and search warrants for text messages and for the Moore Street and Brandywine Road residences by deceiving the court with perjured testimony and erroneous information. All the plaintiffs allege that Detective Horne falsely represented that the Joneses owned six houses, apparently in an effort to create a negative perception of the plaintiffs. In addition, all the plaintiffs assert, vaguely, that Jones Sr. was wrongfully arrested,

6

and, as a result, they have suffered loss of consortium, that they were slandered, and that they have experienced depression and stress.

## DISCUSSION[1]

### A. Dismissal Under Rule 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, __, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A motion under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits; rather, it tests whether a plaintiff properly has stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A court considering such a motion presumes the factual allegations of the complaint to be true and construes them liberally in the plaintiff's favor. *See, e.g., United States v. Phillip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2001). Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a plaintiff must offer "more than labels and conclusions" to provide "grounds" of "entitle[ment] to relief." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. at 1964-65. Thus, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (citations omitted).

---

[1]  For purposes of this Memorandum Opinion, the court presumes, but does not decide, that service of process on Yanta, Naugle, O'Brien, Lieber, Geise, Horne and Kirchner has been effected in both their official and individual capacities.

*B. Claims Under 42 U.S.C. § 1983*

The court notes at the outset that plaintiffs fail to state a claim against the DOJ, the FBI, Yanta, O'Brien, Naugle, Lieber and Geise under 42 U.S.C. § 1983. Section 1983 applies to state actors, not to federal agencies or employees. *See, e.g., Williams v. United States of Am.*, 396 F.3d 412, 415 (D.C. Cir. 2005).

These plaintiffs are proceeding *pro se*, and their complaints are entitled to a liberal construction. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Accordingly, the court presumes that plaintiffs also bring this action against Yanta, O'Brien, Naugle, Lieber and Geise in their individual capacities under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). "A *Bivens* action is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983." *Marshall v. Fed. Bureau of Prisons*, 518 F. Supp. 2d 190, 193 (D.D.C. 2007) (citing *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006) (internal citation omitted)). Under *Bivens*, a plaintiff has "an implied private action for damages against federal officers alleged to have violated [his] constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).

*C. Standing*

Defendants argue that plaintiffs lack standing to bring "any claims related to . . . Jones [Sr.'s] trial." Fed. Defs.' Mot. at 16. The court concurs.

Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies. U.S. CONST. art. III, § 2, cl. 1. "The requisite elements of Article III standing are well established: [a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Hein v. Freedom*

*from Religion Found., Inc.*, 551 U.S. 587, ___, 127 S.Ct. 2553, 2562 (2007) (internal quotation and citation omitted). The injury plaintiffs allege "must affect [them] in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992). "The focus is on the qualifications and the status of the party seeking to bring his complaint before a federal court and not on the issues he wishes to have resolved." *McKinney v. United States Dep't of the Treasury*, 799 F.2d 1544, 1549 (Fed. Cir. 1986) (citing *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 28 (1976)).

"Plaintiffs were not targets, nor defendants, nor suspects, nor conspirators, nor participants; neither were they arrested for any involvement in any illegal or criminal activities." Pls.' Opp'n to Defs.' Mot. to Dismiss Compl. [#31] at 1. Plaintiffs, then, have suffered no injury in fact arising from any of the alleged constitutional violations attributed to these defendants. Plaintiffs were not defendants to the criminal action, and, therefore, the prosecutors' alleged misconduct, failure to disclose information under Rule 16 of the Federal Rules of Criminal Procedure or to disclose *Brady* material, has caused them no harm. Nor have the plaintiffs sustained any injury arising from the FBI Special Agents' actions with respect to the search warrants or wiretaps. Only Jones Sr. has standing to raise such claims, and, thus far, he has met with no success. *See Jones v. Lieber*, 579 F. Supp. 2d 175, 181 (D.D.C. 2008) (dismissing *Bivens* action against Lieber arising from his placement in administrative segregation because Lieber enjoys qualified immunity from suit); *Jones v. Gikas*, No. 07cv1068, 2008 WL 2202264, at *1 (D.D.C. May 27, 2008) (dismissing civil rights action against "Immigration and Customs Enforcement Agents [who] conducted unlawful searches of his apartment and warehouse and subsequently gave perjured testimony in the criminal proceedings against him"); *Jones v. Yanta*,

No. 07cv1172, 2008 WL 2202219, at *1 (D.D.C. May 27, 2008) (dismissing civil rights action against federal and District of Columbia law enforcement officers who allegedly "violated the law by obtaining wiretaps without probable cause, forging documents, making false sworn statements, deceiving the Judge, and suborning perjury, among other things"); *United States v. Jones*, No. 05cr0386, 2007 WL 3287536, at *1 (D.D.C. Nov. 6, 2007) (denying Jones Sr.'s motion to dismiss the indictment against him based in part on alleged "outrageous government conduct"); *United States v. Jones*, 451 F. Supp. 2d at 85-88 (denying Jones Sr.'s motion to suppress evidence seized from Moore Street residence and denying in part motion to suppress evidence obtained from mobile tracking device).

### D. Immunity

#### 1. Sovereign Immunity

The federal defendants move to dismiss plaintiffs' claims against the DOJ, the FBI, and against Yanta, Naugle and O'Brien, Lieber and Geise in their official capacities on the ground that the claims are barred by the doctrine of sovereign immunity. Fed. Defs.' Mot. at 12-13. "Official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent," such that "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Accordingly, the court treats plaintiffs' claims as if they were brought against the United States directly.

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Such consent may not be implied, but must be "unequivocally expressed." *United*

*States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992). The United States has not waived its sovereign immunity for constitutional tort claims, *see Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 477 (1994) (stating that sovereign immunity precludes damage claims against the United States government for constitutional violations brought under the Federal Tort Claims Act), and sovereign immunity extends to governmental agencies such as the DOJ and to their employees where such employees are sued in their official capacities, *see id.* at 483-86. "Sovereign immunity is jurisdictional in nature," *id.* at 475, and absent a waiver of sovereign immunity, the court lacks subject matter jurisdiction to entertain plaintiff's claims for money damages against the DOJ, the FBI or against these federal government officials sued in their official capacities. *See id.*; *Clark v. Library of Congress*, 750 F.2d 89, 101-02 (D.C. Cir. 1984); *Meyer v. Reno*, 911 F. Supp. 11, 18 (D.D.C. 1996).

2. Prosecutorial Immunity

Liber and Geise argue that they are absolutely immune from suit under the doctrine of prosecutorial immunity. Fed. Defs.' Mot. at 17-19.

"[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit under [42 U.S.C. § 1983]." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). The Supreme Court instructs that "whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present" are advocatory decisions protected by immunity. *Id.* at 431 n.33; *see Kalina v. Fletcher*, 522 U.S. 118, 129 (1997) (concluding that a deputy prosecuting attorney's "activities in connection with the preparation and filing of two of the three charging documents – the information and the motion for an arrest

warrant – are protected by absolute immunity," even if these documents contained inaccurate factual statements); *Burns v. Reed*, 500 U.S. 478, 492 (1991) (dismissing Sec. 1983 action against state prosecutor because his "appearance in court in support of an application for a search warrant and the presentation of evidence at that hearing are protected by absolute immunity"); *Porter v. White*, 483 F.3d 1294, 1305 n.8 (11th Cir. 2007) ("Injury flowing from a procedural due process violation . . . that results from a prosecutor's failure to comply with the *Brady* rule cannot be redressed by a civil damages action against the prosecutor under [Sec.] 1983 because the prosecutor is immune from such liability." ), *reh'g denied*, 254 Fed. Appx. 803 (11th Cir. 2007), *cert. denied*, __ U.S. __, 128 S.Ct. 1259 (2008). "The law of immunity in a *Bivens* claim against a federal official mirrors that in a [S]ection 1983 claim against a state official." *Moore v. Valder*, 65 F.3d 189, 192 (D.C. Cir. 1995) (citation omitted), *cert. denied*, 519 U.S. 820 (1996).

Lieber and Geise are "insulate[d] . . . from liability for [their] unquestionably advocatory decision to prosecute" Jones Sr., and their prosecutorial immunity "also protects [them] from liability for allegedly concealing exculpatory evidence from the grand jury and for allegedly manipulating evidence before the grand jury." *Moore*, 65 F.3d at 194. Similarly, their alleged failure to disclose *Brady* material is advocatory conduct protected by absolute prosecutorial immunity. *Id.*; *see Carter v. Burch*, 34 F.3d 257, 262 (4th Cir. 1994) (holding that absolute immunity protects a prosecutor from liability for failing to give defense counsel materially exculpatory evidence), *cert. denied*, 513 U.S. 1150 (1995).

Assuming without deciding that plaintiffs have standing to pursue claims against AUSAs Lieber and Geise for their alleged acts of misconduct in the course of the criminal proceedings against Jones Sr., their complaints fail to state claims upon which relief can be granted.

### 3. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity shield public officials "from undue interference with their duties and from potentially disabling threats of liability," *id.* at 806, and is designed to dispose of "insubstantial lawsuits" on a motion to dismiss, before the point at which the defendant is required to engage in substantial litigation, *id.* at 808. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and . . . is effectively lost if a case is erroneously permitted to go to trial." *Id.* Accordingly, the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

By definition, qualified immunity is not absolute. However, "[a] plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue." *Davis v. Scherer*, 468 U.S. 183, 197 (1984). The court considers, "then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show [that] the [defendant's] conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201. If the facts alleged do not show a constitutional violation, the inquiry ends. *Id.* at 207.

a. Lieber

"[W]hen a prosecutor performs duties which are not intimately associated with the judicial process, only qualified immunity is granted." *Carter*, 34 F.3d at 262. With respect to Lieber's involvement in Jones Sr.'s placement in administrative segregation, this court already has determined that Lieber is protected by qualified immunity, *Jones v. Leiber*, 579 F. Supp. 2d at 181, and there is no need to revisit the matter in the context of this case. Neither Mrs. Jones, Jones Jr. nor Jones Sr. has a constitutionally protected right to visitation, and Lieber's alleged involvement with Jones Sr.'s placement in segregation is not actionable. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 165 (1989) (concluding that prison regulations allowing officials to exclude certain visitors without a hearing "do not establish a liberty interest entitled to the protections of the Due Process Clause"); *Block v. Rutherford*, 468 U.S. 576, 588 (1984) (concluding that a "blanket prohibition [on contact visits with family members and friends] is an entirely reasonable, nonpunitive response to the legitimate security concerns" of the Los Angeles County Central Jail).

b. Yanta, O'Brien and Naugle

Defendants argue that qualified immunity protects FBI Special Agents Yanta, O'Brien and Naugle from suit on the ground that plaintiff cannot show that their constitutional rights were violated. Fed. Defs.' Mot. at 12-15.

Generally, plaintiffs' claims against Yanta, O'Brien and Naugle arise from their having obtained and executed search warrants for the Moore Street and Brandywine Road houses, obtained authorization to monitor telephone calls and text messages, and installed a GPS tracking device on the Joneses' Jeep Cherokee, presumably in violation of their Fourth Amendment

rights. The Fourth Amendment states that "no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. CONST. amend. IV.

The court already has determined that "Yanta's supporting affidavits [were] sufficient to establish probable cause for the text message warrants." *Jones*, 451 F. Supp. 2d at 77. Her "29-page August 10th Affidavit, which served as the foundation upon which subsequent affidavits submitted in support of wiretap and search warrant applications were based, reference[d] information provided by three confidential sources who had first-hand knowledge of [Jones Sr.'s] illicit activity" and "describe[d] at length the results of surveillance, searches, debriefings, review of electronic data, and other investigative techniques." *Id.* Accordingly, the court concluded that "the affidavit clearly establishe[d] probable cause to believe that Jones [Sr.] operated a conspiracy to distribute narcotics." *Id.* Further, the court found that Yanta's two subsequent affidavits in support of the government's application for a wiretap "satisfie[d] the applicable probable cause requirements," *id.* at 81, and summarily rejected an argument that the government failed to "minimize" intercepted conversations to protect matters "pertaining to [the targets'] joint business ventures as well as social or other matters unrelated to a drug conspiracy," *id.* at 83.

With respect to the search of the Joneses' Moore Street house, the court has determined that "[t]he warrant application was supported by a 47-page affidavit sworn to by [FBI] Special Agent Yanta," *id.* at 85, and that it "clearly establishe[d] probable cause to search," *id.* at 86. Further, because the court rejected Jones Sr.'s argument that the warrant was rendered invalid by the investigating agents' alleged failure to present him, Mrs. Jones or Jones Jr. with "a copy of

the warrant with attachment to inform them of the scope of the warrant," and their alleged failure to leave a copy of the warrant on the premises. *Id.* Mrs. Jones' signature was "affixed to each page of a five-page receipt for goods taken during the search," and "[t]herefore, at the very least, Jones was provided with a copy of the warrant and a receipt at the conclusion of the search." *Id.*; *see* Fed. Defs.' Mot., Ex. B (Search Warrant and Receipt for Property Seized).

The government placed "an electronic device – a Global Positioning System ("GPS") – . . . on [Jones Sr.'s] Jeep Cherokee" pursuant to a court Order. *Jones*, 451 F. Supp. 2d at 87. In the course of the search of the Moore Street residence, agents found the Jeep Cherokee parked in the garage. *Id.* The court recognized that the affidavit supporting the original search warrant "specifically noted the Jeep Cherokee as having been observed parked at the Moore Street address" and that Jones Sr. had been observed driving the Jeep. *Id.* The court found that the search of the Jeep was authorized by the original search warrant and that data obtained from the GPS device while the vehicle was in public spaces was admissible at Jones Sr.'s trial. *Id.* at 88. Only "the data obtained from the GPS device when the Jeep Cherokee was parked in the garage adjoining the Moore Street property [was] suppressed." *Id.*

Based on the court's prior evidentiary rulings in the course of Jones Sr.'s criminal proceedings, Yanta, O'Brien and Naugle did not violate plaintiffs' Fourth Amendment rights. Absent factual allegations to withstand these defendants' assertion of qualified immunity, plaintiffs' claims must fail.

c. Kirchner and Horne

The court presumes that Kirchner's argument for dismissal of plaintiffs' complaints is a truncated argument asserting qualified immunity. Relying wholly on the court's ruling on Jones

Sr.'s motion to suppress evidence obtained from the GPS device on the Jeep Cherokee, *see Jones*, 451 F. Supp. 2d at 87-88, Kirchner argues that his actions did not violate plaintiffs' constitutional rights. *See* Mem. of P. & A. in Support of Def. Steve Kirchner's Mot. to Dismiss Pl.'s Compl. at 3-4. Specifically, he argues that "the government is not required to obtain a search warrant to install a GPS or similar device on a vehicle to monitor it in public, *id.* at 4, and, therefore, "placement of the device did not violate [Mrs. Jones'] Fourth Amendment or any other constitutional rights." *Id.* The court concurs. Kirchner cannot be held liable unless he has violated a "clearly established . . . constitutional right[] of which a reasonable person would have known," *Harlow v. Fitzgerald*, 457 U.S. at 818, and the court's prior conclusion that installation of the device is justified, as was the use of data obtained from the GPS device while Jeep Cherokee was in public space, precludes plaintiffs' civil rights claims.

Insofar as plaintiffs allege that Kirchner and Horne testified falsely, the court concludes that they are absolutely immune from suit. *See Briscoe v. LaHue*, 460 U.S. 325, 345-46 (1983) (holding that 42 U.S.C. § 1983 does not authorize a convicted person to assert a claim for damages against a police officer for giving perjured testimony at his criminal trial on the ground that absolute immunity protects any witness from civil liability based on his testimony in a judicial proceeding); *Rogers v. Johnson-Norman*, 466 F. Supp. 2d 162, 175 (2006) (dismissing claim against defendant who allegedly presented false petition for a civil protection order and gave perjured testimony at a criminal trial in the Superior Court on the ground that witness' testimony is absolutely privileged).

## CONCLUSION

Notwithstanding plaintiffs' efforts to distance themselves and their claims from Jones Sr.'s criminal trial and his civil cases filed in this court, plaintiffs lack standing to bring any claims arising from the investigation of Jones Sr.'s criminal activities or from the criminal proceedings against him. The court further concludes that the doctrine of sovereign immunity bars their claims against the DOJ and the FBI, and their claims against Yanta, O'Brien, Naugle, Leiber, and Geise in their individual capacities. Because the facts plaintiffs allege do not establish a constitutional violation with respect to the search warrants or wiretaps, they cannot overcome the qualified immunity which protects Yanta, O'Brien, Naugle, Leiber, Kirshner and Moore from civil liability. Accordingly, the court grants defendants' motions to dismiss and dismisses this action in its entirety. An Order accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge

DATE:

3/31/09